IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE FLINTKOTE COMPANY, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-935-LPS |
| INDEMNITY MARINE ASSURANCE COMPANY LTD., | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| THE FLINTKOTE COMPANY, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-103-LPS |
| AVIVA PLC, formerly known as COMMERCIAL UNION ASSURANCE COMPANY LTD., | : | |
| Defendant. | : | |

Michael P. Kelly, Katharine L. Mayer, McCARTER & ENGLISH, LLP, Wilmington, DE
Gita F. Rothschild, Louis A. Chiafullo, McCARTER & ENGLISH, LLP, Newark, NJ

    Attorneys for The Flintkote Company.

Thaddeus J. Weaver, DILWORTH PAXSON LLP, Wilmington, DE
Fred L. Alvarez, Arthur J. McColgan, II, WALKER WILCOX MATOUSEK LLP, Chicago, IL

    Attorneys for Indemnity Marine Assurance Company Limited and Aviva PLC, formerly known as Commercial Union Assurance Company Limited.

## MEMORANDUM OPINION

September 30, 2013
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court are Plaintiff The Flintkote Company's ("Plaintiff" or "Flintkote") Motions to Compel Arbitration in two related cases. (D.I. 5, C.A. No. 13-935; D.I. 9, C.A. No. 13-103) Also pending before the Court is Defendant Indemnity Assurance Company Ltd.'s ("Indemnity Marine") Motion for Summary Judgment (D.I. 11, C.A. No. 13-935) and Defendant Aviva PLC, formerly known as Commercial Union Assurance Company Ltd.'s ("Aviva") Motion to Dismiss or, in the Alternative, Transfer (D.I. 13, C.A. No. 13-103).

## I. BACKGROUND

The pending motions involve several agreements, including a general liability insurance Policy No. 547/620242RM (the "Policy") (D.I. 6 Ex. A, C.A. No. 13-935 (showing subscription chart)), the Agreement Concerning Asbestos-Related Claims (the "Wellington Agreement") (*id.* Ex. B), and a 1989 agreement between Flintkote and Aviva (the "1989 Agreement") (D.I. 11 Ex. B, C.A. No. 13-103). Genstar Corporation, Flintkote's parent, entered into the Policy on March 15, 1981, for a four-year period. (D.I. 12 Ex. 2 at ¶ 5, C.A. No. 13-935) The Policy lists Aviva, Indemnity Marine's corporate parent, as holding a 2.0780% and 2.597% share of the Policy. (D.I. 6 Ex. A, C.A. No. 13-935) Indemnity Marine was not licensed to provide insurance in Canada, and therefore entered into a separate agreement with Aviva to provide the 2.597% share of the Policy. (D.I. 12 Ex. 2 at ¶¶ 3-4, 6, C.A. No. 13-935) Thus, Indemnity Marine was to reimburse Aviva for the 2.597% share. (*Id.* at ¶ 6)

On June 19, 1985, Flintkote and several of its insurers[1] entered into the Wellington

---

[1] Underwriters at Lloyd's, London, Insurance Company of North America (U.K.) Limited, Phoenix Assurance Company, Sphere Insurance Company, and Drake Insurance Company. (D.I. 15-1 at ¶ 4, C.A. No. 10-103)

1

Agreement, which requires that disputes over coverage be resolved through a three-step alternative dispute resolution ("ADR") process. (D.I. 6 Ex. B at 28, C.A. No. 13-935) The Wellington Agreement contains a provision mandating that "Subscribing Producers and Subscribing Insurers shall resolve through alternative dispute resolution . . . any disputed issues within the scope of the Agreement and the Appendices hereto." (*Id*. at 5 VIII.6) Appendix C of the Wellington Agreement sets forth the ADR process, and Schedule D identifies the insurance policies within the scope of the Wellington Agreement, including the Policy. Aviva is not a signatory to the Wellington Agreement, but Indemnity Marine is.

Aviva and Flintkote subsequently entered into the 1989 Agreement, which calls for dispute resolution through litigation. (D.I. 11 Ex. B, C.A. No. 13-103) The 1989 Agreement provides that "Flintkote and [Aviva] shall resolve through litigation any disputed issues to this Agreement, and nothing contained in any provision of this Agreement or in any provision of the Wellington Agreement, as applied to this Agreement, shall require [Aviva] and Flintkote to resolve any disputes that may arise between them relating to this Agreement through ADR under the Wellington Agreement." (*Id*. at 13)

For the past six years, the parties have been engaged in mediation. (D.I. 11 at ¶¶ 10-11, C.A. No. 13-103) The Mediation Agreement provides that the parties' conduct and statements made in the course of mediation are confidential. In 2012, Aviva and Flintkote determined that they had reached an impasse. (D.I. 15-2 at ¶ 7, C.A. No. 13-103) The parties exchanged draft arbitration agreements, but ultimately failed to execute a final arbitration agreement. (*Id* at ¶ 8; D.I. 11 Exs. F, G, C.A. No. 13-103)

In December 2012, Aviva sought to exercise its right under the 1989 Agreement to

2

resolve its dispute in Court. (D.I. 15-2 at ¶ 9, C.A. No. 13-103) On December 24, 2012, Aviva moved in the United States Bankruptcy Court for the District of Delaware to lift the automatic stay imposed on Flintkote as a bankrupt debtor pursuant to 11 U.S.C. § 362(d), intending to file suit in the Northern District of California. (D.I. 14 Ex. E, C.A. No. 13-103) On February 4, 2013, the Bankruptcy Court lifted the stay, effective on February 19, 2013. (*Id.* Ex. G)

In the meantime, on January 17, 2013, before the stay was lifted, Flintkote filed the instant suit against Aviva here in the District of Delaware. (D.I. 1, C.A. No. 13-103) On February 18, 2013, Flintkote moved to compel arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), to determine Aviva's responsibility to provide insurance for asbestos claims. (D.I. 9, C.A. No. 13-103) On February 19, 2013, as soon as it could do so after the bankruptcy stay was lifted, Aviva filed suit in the Northern District of California. (D.I. 1, C.A. No. 13-711-SI) On March 1, 2013, Aviva moved to dismiss the Delaware case, or in the alternative, transfer it to the Northern District of California. (D.I. 13, C.A. No. 13-103) On May 14, 2013, the Honorable Susan Illston stayed the Northern District of California case pending this Court's ruling on the motion to dismiss. (D.I. 31, C.A. No. 13-711-SI)

On May 3, 2013, Indemnity Marine informed Flintkote that it would no longer participate in the ADR proceedings, arguing that it was not subject to the Policy and, thus, the Wellington Agreement. (D.I. 6 Ex. 1 at ¶ 12, C.A. No. 13-935) Two weeks later, Indemnity Marine confirmed its belief that it was not subject to the Policy. (*Id.* Ex. F) On May 24, 2013, Flintkote filed suit against Indemnity Marine here in the District of Delaware (D.I. 1, C.A. No. 13-935) and, on June 10, 2013, moved to compel arbitration pursuant to Section 4 of the FAA, 9 U.S.C.

§ 1, *et seq.* to determine Indemnity Marine's responsibility to provide insurance for asbestos claims (D.I. 5, C.A. No. 13-935). On June 21, 2013, Indemnity Marine moved for summary judgment. (D.I. 11, C.A. No. 13-935)

On July 31, 2013, the Court heard oral argument on all pending motions in both related actions. (*See* D.I. 27, C.A. No. 13-103)

## II.  LEGAL STANDARDS

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). There is a presumption of arbitrability where a contract contains an arbitration clause, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

## III.  DISCUSSION

### A.  Motion to Compel Indemnity Marine (C.A. No. 13-395)

Flintkote argues that in addition to being a signatory to the Wellington Agreement, Indemnity Marine is subject to arbitration because the question of whether it owes responsibilities under the Policy is properly considered within the scope of that agreement's broad arbitration provision.[2] Indemnity Marine contends that it does not owe insurance coverage

---

[2]Flintkote requests that if the Court is inclined to deny the motion to compel, then the Court should allow Flintkote to conduct limited discovery on the issue of a direct insurer/policyholder relationship, including evidence pertaining to the relationship between Indemnity Marine and Aviva, as well as Indemnity Marine's payments on the Policy. (D.I. 19 at 10, C.A. No. 13-935) As the Court will be granting Flintkote's motion, the request for discovery

under the Policy because the Policy was issued to Aviva. Indemnity Marine also argues that whether it is subject to the Policy does not fall within the scope of the arbitration provision.

The Wellington Agreement broadly provides that "Subscribing Producers and Subscribing Insurers shall resolve through [ADR] . . . any disputed issues within the scope of the Agreement and the Appendices hereto." (D.I. 6 Ex. B at 5, C.A. No. 13-935) The Wellington Agreement defines Subscribing Insurers and Producers to mean any insurers or producers "that have become signatories to the Agreement." (*Id.* at 16) As signatories to the Wellington Agreement, Flintkote is a Subscribing Producer and Indemnity Marine is a Subscribing Insurer. Thus, Indemnity Marine is bound by the terms of the Wellington Agreement, including the provision to resolve disputes within the scope of the Agreement through the ADR process described in Appendix C.

The remaining dispute is whether Indemnity Marine's responsibility under the Policy comes within the scope of the Wellington Agreement. The Court concludes that it does. The Wellington Agreement's broad arbitration provision covers all "disputes concerning insurance coverage." (*Id.* at 1) The arbitration provision is expansive, expressly including threshold issues such as whether insurance policies were issued at all, or were subsequently cancelled. (*Id.* at 26) The Court cannot conclude on this record that the Wellington Agreement "is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). As "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), the issue of Indemnity Marine's responsibility under the Policy falls within

---

is moot.

the Wellington Agreement, and is therefore subject to arbitration.[3]

### B.     Motion to Compel Aviva (C.A. No. 13-103)

Flintkote asserts three grounds to compel arbitration: (1) Aviva waived its rights under the 1989 Agreement, (2) Aviva entered into an implied contract to arbitrate, and (3) Aviva is bound to arbitrate under a theory of estoppel. Aviva notes that it is not a signatory to the Wellington Agreement and further argues that the 1989 Agreement's anti-ADR provision – providing that the parties "shall resolve through litigation any disputed issues to this Agreement" – requires denial of Flintkote's motion. (D.I. 11 Ex. B at 13, C.A. No. 13-103)

The Third Circuit has described two situations in which courts have held that non-signatories are bound by an arbitration agreement through estoppel: (1) "when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement;" and (2) "because of the close relationship between the entities involved . . . and the fact that the claims were intimately founded in and intertwined with the underlying contract obligations." *E.I. DuPont de Nemours & Co. v. Rhone Poulence Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2011) (internal quotation marks omitted). The Court is persuaded that the first scenario is applicable here.

As discussed above, Aviva participated in a six-year mediation with Flintkote, exploiting the Wellington Agreement to its advantage. This is evidenced in Aviva's July 16, 2012 letter to Flintkote, relating to "the pending Alternative Dispute Resolution proceeding pursuant to the [Wellington Agreement]," in which Aviva requested "reimbursement or off-set," as well as

---

[3]It follows that Indemnity Marine's motion for summary judgment will be denied as moot.

"interest under Sub-part 4 of Section XX" pursuant to the Wellington Agreement. (D.I. 11 Ex. E, C.A. No. 13-103) In making such demands, Aviva's counsel explicitly relied upon the Wellington Agreement, stating that "[a]bsent resolution of the issues in the pending Wellington ADR, the Certain London Companies [including Aviva] intend to include the issues raised in this letter in the Wellington Arbitration." (*Id.*) The Court is persuaded that Aviva relied upon and attempted to leverage its participation in the Wellington Agreement to secure a favorable resolution of disputes. "To allow a plaintiff to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." *DuPont*, 269 F.3d at 200.

Further, both parties recognize that estoppel is proper if a party "by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." *Great Am. Credit Corp. v. Wilmington Housing Auth.*, 680 F. Supp. 131, 134 (D. Del. 1988). The Court concludes that Flintkote reasonably believed that the parties were engaged in the Wellington ADR process. In addition to the six years of mediation and the July 16 letter discussed above, the parties also exchanged draft arbitration agreements. Although the parties failed to execute an agreement, statements included in the drafts support a finding that Flintkote reasonably believed Aviva was binding itself to the Wellington Agreement procedures. For instance, Aviva's draft agreement included the statement that "the Parties agree that they have been unable to resolve their disputes through mediation and negotiation and now desire to commence binding arbitration pursuant to the Wellington Agreement." (D.I. 11 Ex. F at 3, C.A. No. 13-103) Similarly, Aviva sought to include in the parties' agreement a provision that "[t]he terms and provisions of the Wellington Agreement . . . shall govern and control the conduct of

7

this binding Arbitration . . . ." (*Id.*) Based on Aviva's conduct and statements, Flintkote reasonably believed Flintkote and Aviva were engaged in the Wellington ADR process.

The next question is whether Flintkote changed its position to its detriment in reliance on its belief that Aviva intended to pursue the ADR process of the Wellington Agreement. Flintkote argues that it would be detrimentally harmed if Aviva were not held to the Wellington Agreement's ADR process at this point because, had it known Aviva was reserving the right to litigate, Flintkote would have brought suit "years ago." (D.I. 18 at 6, C.A. No. 13-103) Flintkote further contends that had litigation started years ago, the disputes may have already been resolved, and Flintkote would not have lost the time value of money or spent six years attempting to reach resolution through mediation. (*Id.* at 6, 8) The Court concludes that these considerations demonstrate detrimental reliance by Flintkote. Accordingly, the Court will compel arbitration.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court will deny as moot Indemnity Marine's Motion for Summary Judgment (D.I. 11, C.A. No. 13-935), deny as moot Aviva's Motion to Dismiss or, in the Alternative, Transfer (D.I. 13, C.A. No. 13-103), and grant Flintkote's Motions to Compel Arbitration (D.I. 5, C.A. No. 13-935; D.I. 9, C.A. No. 13-103). An appropriate Order follows.

---

[4] It is unnecessary for the Court to address Flintkote's remaining theories for compelling arbitration.

8